[OCTOBER TERM, 1915.]

## CHICAGO, B. & Q. R. CO. v. SIMPSON BROS.

(No. 814; Decided October 5th, 1915; 151 Pac. 902.)

APPEAL AND ERROR—ACTION—CARRIERS—CARRIAGE OF LIVE STOCK—DAMAGES FOR DELAY—RAILROADS—NEGLIGENCE—PRECAUTIONS REQUIRED—EVIDENCE—PLEADING—AIDER BY VERDICT—EXCEPTIONS TO TESTIMONY — INTERSTATE SHIPMENTS — "TWENTY-EIGHT HOUR" LAW—REVIEW.

1. A railroad company is bound to take reasonable precautions against delay in handling shipments of live stock. Probable results from weather conditions that may be foreseen should be anticipated, and where negligence and resulting damages is alleged as a result of overloading an engine used in transporting a trainload of cattle, it is a question for the jury.

2. In an action for damages to a shipment of live stock an allegation of negligence in holding the shipment between two interstate points without unloading for rest, food or water for a period of forty-three hours is sufficient to bring the case within the federal act (34 Stat. 607; U. S. Comp. St. 1913, Secs. 8651-8654) prohibiting carriers under a penalty from confining live stock in transsit for longer than twenty-eight hours without unloading for rest, food and water, and where there is evidence tending to prove that such failure contributed to the injury complained of, the question should be submitted to the jury under proper instructions.

3. In such case where the evidence clearly showed that the shipment was an interstate one, the finding for plaintiff under the instruction given cured any defects in the complaint.

4. Where the answer of a witness went beyond the question and no motion was made to strike it from the record, the point will not be reviewed on appeal.

Error to the District Court of Sheridan County; Hon. V. J. Tidball, Judge.

The material facts are stated in the opinion.

*E. T. Clark* and *Burgess & Kutcher,* for plaintiffs in error.

The testimony of the witness John Wallace was incompetent and should have been excluded; the condition of the cattle three months after shipment was not a proper basis for estimating shrinkage; it is not shown whether the cattle improved or depreciated under proper or improper care and treatment. The testimony was misleading to the jury. The only competent testimony would have been the condition of the cattle at the date of their delivery at destination. The only proper measure of recovery would be the difference between the fair market value of the cattle when delivered and their market value at point of destination; the evidence was insufficient to sustain the verdict; the issue of negligence was reduced by the court to the alleged overloading of defendant's engine between Billings and Bridger; the jury should have been instructed that unless such negligence was established by a preponderance of the evidence. they should have found in favor of defendant;

the trial court erred in giving an instruction with reference to what is known as the "twenty-eight hour" law, for the reasons: (1st) that said law was not pleaded; (2nd) the instruction does not correctly state the law; (3rd) that it was the company's duty to feed and water cattle irrespective of any contract requiring the same; (4th) the instruction is misleading in not limiting the effect of such a law to the establishment of a *prima facie* case of neglect; (5th) given without qualification, it prejudiced the jury against the company. (Hale v. Mo. Pac. R. Co., 54 N. W. 517 (Neb.); Hengstler v. Flint &c. Ry. Co., 84 N. W. 1067 (Mich.); McKenzie v. Mich. Cent. R. Co., 100 N. W. 260 (Mich.) The court specifically instructed the jury, as a matter of law, that the company was not chargeable with the neglect of the shipment of cattle from Denver to Billings. The verdict is not sustained by the evidence; the petition averred negligence: (1st) in permitting two cars to have flat wheels; (2nd) in overloading its engine between Billings and Bridger; (3rd) in holding the cattle between Alliance and Tyndell for forty-three hours without rest, food or water. The first and third allegations were eliminated as issuable facts by the court. Upon the second ground, the court submitted to the jury several interrogatories. The sole question in the case is whether the evidence supports the allegation of negligence in overloading the engine between Billings and Bridger, as plaintiffs cannot recover by proof of any other negligence (14 Ency. Pl. & Pr. 342; Carter v. Kansas City &c. R. Co., 210 N. W. 607 (Iowa); Miller v. Chicago & N. W. R. Co., 23 N. W. 756 (Iowa); Volguardson v. Iowa Tel. Co., 126 N. W. 928 (Iowa); Flaherty v. Butte Electric R. Co., 107 Pac. 416 (Mont.); Bracey v. Northwestern Imp. Co., 109 Pac. 706 (Mont.); and the evidence must show a connection between such negligence and the injury. (Morrison v. La France Copper Co., 101 Pac. 243 (Mont.) The only evidence on this point is that of Edgar Simpson, and that was largely hearsay, consisting of an alleged conversation with a brakeman. There was no evidence of overloading

as an ultimate fact.  A brakeman's declaration is not bind-
ing on his employer.  (16 Cyc. 1022; Patterson v. Wabash
&c. R. Co., 19 N. W. 761 (Mich.)  Hearsay evidence
standing alone is insufficient to establish a vital issue in
the case.  (Drake v. N. Y. Cent. R. Co., 30 N. Y. S. 603;
Bank v. Wooddy, 10 Ark. 638; Hutchins v. Castle, 48 Cal.
152; Lehman v. Frank, 19 N. Y. App. Div. 442, 46 N. Y.
S. 761; Equitable Mt. Co. v. Watson, 46 S. E. 440 (Ga.);
Lumber Co. v. Lumber Co., 49 S. E. 729 (Ga.); Claflin v.
Ballance, 18 S. E. 309 (Ga.); Eastlick v. So. Ry. Co., 42
S. E. 499 (Ga.); Suttles v. Sewell, 43 S. E. 486 (Ga.);
Childers v. Peckenpaugh, 118 S. W. 453 (Mo.); Rosen-
berg v. Wilkins, 111 N. Y. S. 539; Jones v. Phimmer, 118
S. W. 109 (Mo.); Stuart v. Harris, 69 Ill. App. 668; Sher-
man v. Stafford, 51 Atl. 48 (R. I.)  The testimony of B. J.
Amend, engineer, E. N. Haas, fireman, C. J. Warfield, con-
ductor, and W. H. Johnston, dispatcher, all showed that the
drop in temperature was unusual and that there was no way
to foresee or obviate the difficulty between Billings and
Bridger; the weather conditions being extraordinary and
the delay being in no sense due to incapacity of the engine.
The burden was upon plaintiff to prove the negligence.
(Midland Valley R. Co. v. Fulgham, 181 Fed. Rep., p. 95;
Hotchkiss v. Green Bay & W. R. Co., 141 N. W. 231.)
Verdicts cannot rest upon conjecture and verdicts contrary
to the evidence will be set aside.  (29 Cyc. 830.)  A rail-
road is not an insurer against consequences of a shipper's
choice as to time of shipment or against the inevitable
shrinkage in a shipment of southern cattle to a northern
climate in the dead of winter, when the temperature reg-
isters thirty degrees below zero.

*R. B. Parker* and *Clyde M. Watts,* for defendant in error.

The objection to the testimony of witness Wallace was
general and was not sufficient for consideration on appeal.
(Wigmore Evidence, Sec. 18.)  There was evidence of a
shrinkage in the cattle of sixty pounds per head.  Holding
cattle more than twenty-eight hours is a violation of the

federal statutes and an act of negligence. (Ballard v. Collins, 115 Pac. 1051.) The evidence showed that the delay commenced in the Billings yards by the freight crew having in charge forty-five cars of plaintiffs' stock consenting to push a Northern Pacific passenger train ahead of them, which was frozen up. There was evidence of a lack of motive power. The cases of Hale v. N. Pac. R. Co., 54 N. W. 517, and Cram v. C. B. & Q. R. Co., 123 N. W. 1045, are not in point for the reason that the federal statute was not pleaded. The declaration of the brakeman to the effect that the engine was overloaded and could not pull the train was competent as a part of the *res gestae*. (Alsever v. Railroad, 88 N. W. 841; Fish v. Railroad, 65 N. W. 995; Hermes v. Railway Co., 50 N. W. 584; Durkee v. Railway Co., 9 Pac. 99; Railway Co. v. Elliott, 74 N. W. 628; Kern v. Des Moines City Ry. Co., 118 N. W. 452; Christopherson v. Railroad, 109 N. W. 1077; Hyvonon v. Iron Wks., 115 N. W. 167.) Defendant had an opportunity to make a good shipment and failed, and had an opportunity to show to the court and jury that it made a good shipment and failed. The judgment of the District Court should be affirmed.

Scott, Justice.

The defendants in error, who were plaintiffs in the lower court, recovered a verdict and judgment against the plaintiff in error for an alleged loss and shrinkage of certain live stock shipped by them during the month of February, 1913, from Denver, Colorado, over defendant's railroad to Tyndell, Montana, which loss and shrinkage were alleged to have resulted from delay caused by the alleged neglect of defendant in negligently overloading its engine between Billings and Bridger, Montana, and in holding the live stock en route between Alliance, Nebraska, and Tyndell, Montana, without rest, food or water for the period of forty-three hours. ·

With the exception of the alleged failure to so feed, rest and water the stock en route, the issues were reduced by

the instructions of the court to the alleged overloading of the engine between the points indicated.   The evidence tends to show that the train originally consisted of forty-seven carloads of stock, amounting to 1,956 head of cattle. Two carloads were laid off at Gillette, Wyoming, as to which plaintiffs were not permitted to recover and of which no cross-error is here assigned.   The balance of the train reached Billings on the morning of February 11th and left that place for Tyndell, a distance of 47 miles, at 5:40 o'clock a. m. of the same day.   That the thermometer registered a temperature of 30 degrees below zero, and that a Northern Pacific passenger train pulled out from Billings just ahead of the train in question, and that owing to the cold weather it was having trouble from the effect of cold on its air brakes and the stock train was delayed from that cause and also from the effect of cold weather on its brakes.   As expressed by the engineer in charge of the engine, who testified as a witness, and whose evidence is undisputed, "Well, the air is coupled between the cars with hose.   The hose, in making the coupling, you raise them up and they work in a socket, and when the hose freezes, it freezes them stiff— when the slack of the train come up the hose will freeze, then when the train is stretched out, the hose, instead of stretching out, will open up and cause a reduction in the train line.   Any reduction in the train line will set the brakes, and this was done then and caused us to stall with the train."   This witness further testified that at the Yellowstone bridge south of Laurel, in Montana, the necessary slowing up of the train bunched the same and when it started up the hill after crossing the bridge the train stretched out and the hose, by opening up, applied the brakes; that he had a D-4 superheating engine with a capacity of 1,600 tons and that the tonnage of the train was 1,329 tons and that the usual tonnage of freight on that particular line was 1,600 tons with that class of engine. That the difficulty here complained of could not be avoided except temporarily, and that it happens often during cold weather in the winter time, but not under normal condi-

tions, and that the running time between Billings to Tyndell, in the absence of such difficulty, is about three hours. Other witnesses corroborate and none dispute the testimony of this witness, except that one of plaintiffs, who accompanied the shipment as caretaker of the cattle, was inquired of as to what occurred en route between Billings and Bridger, Montana, and made answer as follows: "Well, went ahead until across the Yellowstone just south of Laurel, crossed the bridge there and then struck Mason Hill, and they stuck on that hill, and they tried several times to start the train, would back up and take a run at it and try to make the hill, and they couldn't do it, and they tried that several times, and finally they had to cut the train in two, and I got out to see what was the trouble and asked the brakey what was the matter, and he said 'overloaded, couldn't pull it up the hill.' So they cut the train in two there and pulled half of it up to Silesia, about three miles; went back and got the other half and brought it up and connected it up and went on, but it is a heavy grade the whole way from that bridge, and they had to go very slow, made awful poor time. Got to East Bridger and they had to cut it in two again and pull it from there to Tyndell, a distance of about six miles, a section at a time."

There was no evidence offered by plaintiff other than what the brakeman said and the physical fact to show that the engine used was too small or overloaded, and the hearsay evidence of the brakeman was received without objection. The question of its weight or force to prove a probative fact need not here be discussed for the reason that the physical facts were apparent, were shown in the evidence and warranted the inference of the jury that with the weather conditions then existing and its effect on the equipment at that particular time showed that the load was too much for the engine to pull up the grade. The question was not alone whether the engine was overloaded, but whether its was actionable negligence on the part of the company to overload it. Under normal conditions it was able to pull the load. Upon this question the evidence is

undisputed.  The evidence also tends to show that there was a heavy grade going up Simpson Hill where the train stalled.  While the railroad was not an insurer, it was bound to use reasonable care in the matter of the transportation of the stock.  The jury found specially that the engine was overloaded.  Conditions that could have been foreseen should have been anticipated.  There was no attempt to add to the power.  The evidence tends to show that from Alliance to Billings the weather had been extremely cold, and it will be presumed that the company knew of that fact and it would seem that the company knowing of the heavy grade over which the train was to be hauled, and the evidence being to the effect that in such weather the air brakes owing to the extreme cold would set and stall the train, and from the record that is what occurred.

We are of the opinion that the evidence tended to show that one of the contributory causes to the weakened condition of the cattle at the time they reached their destination was the failure of the company in view of the condition of the weather to furnish sufficient motive power to properly haul the train from Billings to Bridger and that the evidence supports the verdict of negligence in that respect. The evidence as to the power of the engine under normal conditions does not meet the question, for under such conditions it is not shown that the brakes would freeze.

It is alleged in the petition and denied in the answer that the defendant "held said stock between Alliance and Tyndell, without rest, food or water for 43 hours, which was negligence of defendant, which negligence in part caused damage complained of."  It is here urged that this allegation is not sufficient to bring the case within the act of Congress regulating care and feed of stock shipped by carriers of live stock for hire from one state to another.  Upon the facts this was such a shipment.  The obligations assumed by the railroad under the Congressional enactment were and are specifically stated in the act.  Ample provision was required of the railroad for such care of the live stock.  A penalty could be exacted of the railroad for failure or neg-

lect in this respect, and proof of such failure, and that it contributed to the injury complained of constituted evidence of negligence on the part of the company, and sufficient to go to the jury on the question of negligence. The allegations in the petition might perhaps have been more specific, but such defect, if any, was not met by motion and they certainly were not misleading, and complaint of holding the cattle for that length of time on an interstate shipment of live stock sufficiently directed the attention of the defendant to the Congressional enactment regulating the shipment, and the requirements of such law, and that plaintiffs intended to rely in part upon that law under the facts alleging as making out a *prima facie* case of negligence. The weakened condition of the cattle at the time they reached their destination could reasonably be in part at least attributed to the length of time they had been kept in the cars en route without being unloaded for rest, food and water.

The court instructed the jury "that under the law in force at the time of the shipment in question it was unlawful for any railroad company who was a common carrier for hire to confine in its cars for a period longer than 28 consecutive hours any cattle it had received for transportation without unloading the same in a humane manner, provided that upon a written request of the owner on that particular shipment, they might be retained for 36 hours, and that holding cattle in excess of said 36 hours by any railroad company was unlawful unless occasioned by storm or other accidental or unavoidable causes which could not be anticipated or avoided by due diligence and foresight." It is claimed that it was error to give this instruction, as the issue of violation or non-violation of the law was not squarely presented by the pleadings. We have already referred to the pleadings and are of the opinion that whatever the allegation lacked in clearness was supplied by the evidence and that further there was a clear aider of the pleadings by the verdict, and further, that this instruction on the issues and proof was properly given to the jury. It was an interstate shipment of live stock and was regulated by the act of Congress, the requirements of

which were violated with reference to unloading, feeding, watering and resting the stock in transit, and the actionable excuse of the statute for failing to do so was clearly pointed out to the jury by the instruction which was as fair to the railroad company as it was entitled to or could reasonably expect. There was no error in giving this instruction.

The court refused to give at the defendant's request the following instructions, viz.: A. "You are instructed in this case to find a verdict in favor of the defendant and against the plaintiff." B. "You are instructed that in this case the plaintiff, if it recover at all, must recover upon proof by a preponderance of the evidence of the allegations of negligence charged in its petition and upon proof only of the charges of negligence set forth in its petition, and you are further instructed that the plaintiff in its petition charges the defendant with negligence in the transporting of its cattle from Billings, Montana, to Tyndell, Montana, in one particular only, namely: that the defendant overloaded its engine between Billings, Montana, and Bridger, Montana, and as a result thereof, an unreasonable delay occurred between said points, and if you find from the evidence that the plaintiff has failed to sustain this particular charge of negligence by a preponderance of the evidence, then you must find in favor of the defendant."

In view of what has already been said as to the issues and the sufficiency of the evidence, it is apparent that the court was right in refusing to give these instructions. As already stated, there was evidence sustaining plaintiff's right of recovery upon the allegations of overloading between Billings and Tyndell.

The evidence of one Wallace was objected to. He was inquired of and made answer as follows: "Q. Are you able to state from your observation of the cattle three or four days before the shipment and the cattle after the shipment, as you observed them, the difference in weight? Defendant objects to the question as incompetent, irrelevant and immaterial, and as calling for a condition of things three months subsequent to the shipment. By the court: Was it three

months after the cattle were received that you saw them? By the witness: It was three months, about three months from the time I saw the cattle at Pueblo until I saw the cattle upon the range at Clarke's Fork, yes sir.    Objection overruled.    Defendant excepts.  A. Well, I should judge there were forty pounds per head in weight in difference in the looks of the cattle from the time I had saw them again. Q. Forty pounds which way, lighter or heavier?  A. Forty pounds lighter."   The objection at the time it was made was not good.   The value of the stock three months after it was shipped might have been material as a starting point to ·determine its value at the time it was unloaded at Tyndell three months before, in view of the condition of the weather, feed and shelter during the intervening time.   The weight of the evidence was for the jury.   We think there was no error in admitting this testimony.   Aside from this, the question objected to was preliminary, and the answer went beyond the question, and the answer stands in the record without any motion to strike it from the record.   The plaintiff in error is not in position to have the alleged error reviewed.

We discover no prejudicial error in the record and the judgment will be affirmed.                                *Affirmed.*

POTTER, C. J., and BEARD, J., concur.